Ward v. Ward.

---

## WARD v. WARD.

1. Error cannot be assigned on the admission of evidence to which the plaintiff in error objected, wishing the court to note the objection, if no bill of exception is sealed.
2. It is not proper to except to the charge of the court to the jury generally, without specifying the points excepted to; and the court below can refuse to allow such general exception. But if the court below allow and seal such general exception, error may be assigned on any part of the charge.
3. After the case is read and the argument commenced, it is too late for the defendant in error to call for the bill of exceptions. And the court will hear and determine reasons of reversal assigned upon the printed bill of exceptions, although there should in fact be no bill of exceptions.
4. A former verdict with judgment thereon between the same parties upon a point in issue in the former suit, will conclude and estop in a suit between the same parties, although not pleaded in the latter suit, if the party offering it as an estoppel has had no opportunity to plead it.
5. Where, in one suit, there are several distinct causes of action, it is proper to direct the jury to find the issues separately and to assess the damages for each matter separately.

---

This was an action on the case, brought by William Ward, the defendant in error, against John Ward, the plaintiff in error, in the Bergen county Circuit Court, and removed from thence to this court by writ of error.

The declaration below contained three counts. The first count sets forth that the plaintiff was seized of a certain close and meadow, situate at, &c., through, along, and over which a certain brook and stream of water had always been accustomed to flow, and still of right to flow out of the same, in and upon

a certain close of the defendant, contiguous and adjoining to said close of the plaintiff, in its natural channel, freely and unobstructed, except as the said brook and stream was hindered and obstructed by an ancient milldam on the said close of the defendant, when said dam was held and maintained at the same height at which it was held and maintained on the third day of May, 1830. Yet the defendant did wrongfully rebuild and raise the said ancient dam higher than the same was kept on the third day of May, 1830, and did erect and build another dam higher than said ancient dam was kept on the third day of May, 1830, upon the said close of him the defendant, in and across said brook and stream, and kept said ancient dam, so rebuilt and raised higher, by means whereof the waters of said stream were prevented from flowing from and out of the close of the plaintiff, as they had before been accustomed to flow, and still of right ought to flow, and were pent up and thrown back, and made to overflow and drown the plaintiff's meadow land aforesaid.

The second count was the ordinary count, for nuisance in obstructing the free flow of water across the plaintiff's lands.

The third count was as follows: "And for that whereas, also, the plaintiff heretofore, to wit, on the first day of May, in the year 1838, and from thence hitherto, at the township of Franklin, in the county of Bergen, was seized in fee simple, and possessed of a certain lot of land there situate, known as the distillery lot of the plaintiff, and of the distillery thereon being, and of a certain other lot known as the cider-house lot of the plaintiff, in said township, near to said distillery lot, and of the cider-house thereon ; and by reason thereof, the said plaintiff, during all the time aforesaid, ought to have had, and still of right ought to have, a free passage over certain lands of the defendant, then and there situate between said distillery and cider-house, for the purpose of leading the cider from the said cider-house to said distillery, and the right to place, keep, and maintain leaders, troughs, and gutters over said lands of the defendant, from said cider-house to said distillery, to pass and convey the cider from said cider-house to said distillery, free and unobstructed as to the said distillery lot and cider-house of

the plaintiff, with the appurtenances belonging and appertaining. Yet the said defendant, well knowing the premises, but contriving to injure the plaintiff, while he, the plaintiff, was so seized and possessed of said distillery and cider-house and said lots of land, with the appurtenances as aforesaid, to wit, on the first day of May, in the year eighteen hundred and thirty-eight, and on divers other days and times between that day and the commencement of this suit, to wit, at Franklin aforesaid, wrongfully and injuriously removed the leaders, troughs, and gutters of the plaintiff, placed upon the said land of the defendant between said distillery and cider-house for the purposes aforesaid, and placed and piled up large quantities of bark, stone, boards, and timber, and built a wall and vault, and divers other obstructions on and upon said lands of him, the defendant, lying between said cider-house and distillery, and over which the said plaintiff was then and there entitled to said right of free passage to convey his cider as aforesaid, and kept and continued the said bark, boards, timber, stones, wall, vault, and other obstructions across the said lot, on which the plaintiff was entitled to free passage for his cider aforesaid for a long space of time, to wit, from thence hitherto, and thereby, during all the time aforesaid, the said right of passage of the plaintiff for conveying his cider across said lot of the defendant was and still is obstructed and stopped up, by means whereof the plaintiff could not, during the time aforesaid, or any part thereof, nor can he now have, enjoy, and use his said right of passage for his cider, nor his said distillery and cider-house, as he otherwise would have done, and of right ought to have done, and hath been and is deprived of the benefit of the same, and of great profits and gains which he might else have made therefrom, to wit, at Franklin aforesaid. By means of which several premises, the plaintiff hath sustained damage to the amount of seven hundred dollars; wherefore he brings suit."

To this declaration the defendant pleaded the general issue.

On the trial, the plaintiff below proved that he and the defendant were seized, as tenants in common, of a four acre lot, containing the mill lot and distillery in the declaration men-

tioned.   He gave in evidence a deed from himself to the defend-
ant, dated May 3, 1830, by which he conveyed all his interest
in the four' acre mill lot to the defendant, "together with the
privilege of holding the milldam the same height as it now is,"
and with a reservation in these words : "except thereout the
distillery and every thing thereunto belonging, with the same
privilege as it has heretofore been used for distilling, unto the
said party of the first part and to his heirs and assigns."

The plaintiff below gave parol evidence to show that the dam
on the defendant's lot had been raised by him since the third day
of May, 1830, and the plaintiff's meadow thereby overflowed
and damaged ; to rebut which the defendant gave parol evidence
to show that it was not raised in fact.   The plaintiff also gave
in evidence the record of the pleading and judgment in a former
suit, brought by John Ward against William Ward, in Bergen
Circuit Court, in trespass, for two causes of action, one for enter-
ing this very mill close and taking down part of this very dam,
the other for assault and battery.   To these charges William
Ward pleaded, besides the general issue, first, as to taking down
part of the dam, that he was seized of a lot of meadow adjoining
the plaintiff's close, and was entitled to have a stream that flowed
over it flow off over the plaintiff's close unobstructed, except so
far as the same was obstructed by an ancient milldam on the
plaintiff's (John's) close, while maintained at the same height
as it was on the third of May, 1830; that the plaintiff (John)
had raised that dam higher than it was on May 3, 1830, and
than he had a right to do, by reason whereof the waters of said
brook were flowed back upon his meadow injuriously, and
that he therefore entered the plaintiff's close, as he had right
to do, and took down the part of the dam which was so raised.
As to the assault and battery, he pleaded *non assault de-
mesne.*   To these pleas the plaintiff replied—1st, that he did not
raise the dam as alleged ; 2d, as to *non assault demesnes, De
injuria,* &c., concluding to the country.   The jury found spe-
cially that John Ward had raised said dam, as alleged in the
defendant's plea ; that the defendant was guilty of the assault

Ward v. Ward.

and battery, assessing the plaintiff's damage at six cents; and that the defendant was not guilty of the residue of the trespasses in the declaration mentioned. To the admission of this record the defendant objected, and, upon the same being admitted by the court, asked the court to note the objection, but prayed no bill of exceptions.

The plaintiff gave evidence, under the same count, to show that before May 3, 1830, there were troughs and leaders running from the cider house to the distillery, used in carrying on the distillery, which had run across part of the four acre lot conveyed to the defendant; that the defendant had taken down these leaders, had obstructed their use, and prevented the defendant from putting them up, and that without these troughs the distillery was valueless, or nearly so; and that the plaintiff had, by reason thereof, been deprived of the use of the distillery for several years. It was shown, on the part of the defendant, that the cider-house had been burned down since the deed of May 3, 1830; and that, after rebuilding the same, the plaintiff placed more of his cisterns in the cider-house than before, and that the troughs and leaders were placed in a position somewhat different from what they were before, some witnesses testifying that they were inconvenient to the defendant, and others that they were not. It was proved, by witnesses on both sides, that the defendant had forbidden the plaintiff to put up any leaders, and had piled bark and logs in the place where they used to pass, so that they could not be put up.

When the cause rested, the Chief Justice (who held the Bergen county Circuit Court) charged the jury as follows:

The plaintiff complains that, on the 1st of June, 1832, he was, and ever since has been seized and possessed of a parcel of meadow land, in the township of Franklin, through which flowed a stream of water; and that the defendant, on the 1st of June, 1832, raised a dam higher than it was on the 3d May, 1830, and higher than it ought to have been, and has since kept it higher than it ought to have been, by means of which the water was thrown back on the plaintiff's meadow, his grass there growing injured and destroyed, and the land rendered spongy, rotten, and impassable.

The plaintiff further complains that, on the 1st of May, 1838, he was seized and possessed of a lot and distillery, and also of another lot upon which was a cider-house, and that he ever since ought, and still of right ought to have a free passage across land of the defendant, between the distillery and cider-house, for the purpose of leading the cider to the distillery, and of placing leaders and troughs across the defendant's lot for that purpose; that the defendant has wrongfully removed the leaders and troughs, and has placed piles of bark and logs and a vault and other obstructions on his lot, so that the passage of the cider was obstructed and stopped, so that the plaintiff was interrupted in the enjoyment of the distillery, and deprived of the profits which he might else have made.

To each of these charges the defendant has pleaded not guilty.

To sustain his first ground of action, backing water on his land, the plaintiff must show his title to the meadow lot, and the fact that the defendant has thrown the water back upon it by raising the dam higher than by law he was entitled to do. How high was he entitled to hold the dam?

It seems that the four acre mill lot was devised by Col. Peter Ward (the father of these parties) to his two sons, Peter, and John Ward, the defendant. Peter's share was afterwards conveyed by his assignees, and came to William. William and John Ward (the parties to this suit) became joint owners of the mill lot on the 1st May, 1830. On the 3d May, 1830, William, the plaintiff, conveyed his share to his brother John, the defendant. The deed contained this clause, after conveying the land, "together with the privilege of holding the milldam the same height as it now is."

This deed, then, by the act of these parties themselves, fixes the true height of the dam to be the same height as it was on the 3d May, 1830, the date of the deed. The inquiry is, how high was the dam on the 3d May, 1830? Has it since been higher than it then was? If yea, how long and what damage?

Upon this part of the case the plaintiff has offered in evidence before you the record of a former suit between these same parties. And it becomes a material question how far

the record in that case is binding upon you and upon the parties in this cause, and what the effect of that verdict must be upon this cause.

It appears that in May, 1846, John Ward, the defendant, sued William (the plaintiff) for an assault and battery, and for injuring and breaking his milldam. He complains that, on the *first of March*, 1815, the defendant, William, broke and destroyed a part of his dam, and split and broke the planks on the top of the milldam, and at the same time with his fists beat the plaintiff, and threw him into the water.

To these charges the defendant pleaded—

1st. That John, the plaintiff in that suit, had raised his dam higher than he ought to have done, and higher than it was on the 3d May, 1830, and thereby overflowed William's land, and injured his grass, and that the defendant, William, because the water was so injuriously thrown back on his land on the 1st March, 1845, by means of a plank and timber put on the top of the dam, entered on the plaintiff's land (John's) and removed and broke the plank board and timber placed on the dam, as he had a right to do ; and as to beating John, he pleads that John attempted to beat him, and that in self-defence he committed the assault and battery on John ; and lastly, he pleads that he was not guilty of the trespasses.

Now here were three material issues submitted to the jury.

1. Whether John had, 1st March, 1845, raised his dam higher than he had a right to.

2. Whether William, in beating his brother, acted in self-defence.

3. Whether William was guilty of the trespasses charged. Now the jury found—

1. That John had raised his dam.

2. That William was guilty of the assault and battery.

3. That he was not guilty of injuring the said plaintiff's rights in breaking the dam.

How is this finding to operate upon you ? I take the well settled rule of law to be this, that when a material traversable fact directly in issue between two parties has been ascertained by the finding of a jury, and judgment final has been rendered

upon that verdict, and remains unreversed, that finding is conclusive between those parties, and it does not lie in the mouth of either afterwards to gainsay it.   It rests upon the principle that there should be an end of litigation.   Justice requires that every cause should be once fairly tried, and when a fact has once been fairly and legally settled, it should not be again disturbed, but that that controversy should be closed for ever.

Now, in regard to the record offered, John Ward can never again sue William for the assault and battery complained of in the former suit.   Nor can William ever hereafter deny the assault. Why ?  He has been pronounced guilty once by a jury.   John can never again sue his brother for cutting down his dam.  Why ? The jury pronounced him not guilty, and that verdict is conclusive ; and, upon the same principle, John cannot deny that, on the 1st March, 1845, his dam was too high.   Why ?  Because the jury in the former suit found that very fact, and judgment has been pronounced upon it, and the parties' mouths are stopped from further controverting it.

It is said, however, by the defendant's counsel, that in order to make that verdict conclusive, and to estop the defendant from denying its truth, the plaintiff should have pleaded the estoppel.   But how could he have pleaded the estoppel ?  The defendant pleaded not guilty.   If William Ward had sued in this action merely for raising his dam too high on the 1st March, 1845, and overflowing his land on that day, the plaintiff might have set up the verdict of the former jury as an estoppel ; he might have replied that the former jury had settled that fact.   But the plaintiff in this suit had sued not only for the dam being too high on the 1st March, 1845, but he alleges that the dam was raised too high on the 1st June, 1832, and was continued too high until the commencement of the suit in May, 1847, for a period of fifteen years.   He asks damages for that period.   Now the plaintiff may recover for the whole or for any part of that period.   The former verdict establishes the fact, that on one day (1st March, 1845,) that dam was too high, and for that day the plaintiff is entitled to your verdict ; but for all the rest of the period the question remains open, and you are, by your verdict, to settle whether the plaintiff's land

has been overflowed; and if overflowed, what damages the plaintiff has sustained.

I wish to make myself clearly understood.

It is true, as contended by the defendant's counsel, that a verdict by one jury, as to the height of water, will not conclude another jury upon that question, except upon a point precisely in issue.

Your verdict will conclude as to the height of the water within the time included in this declaration, that is up to May, 1847. Suppose your verdict should be in favor of the defendant, the plaintiff cannot sue for damages within that period. But should the plaintiff sue for injuries sustained since May, 1847, then your verdict will not be conclusive. It may be offered in evidence as the opinion of intelligent men, but it will not be binding upon the conscience of other jurors.

If I have made myself understood, you will perceive, gentlemen, that in the opinion of the court, in point of law, the fact is settled, that on the 1st March, 1845, that dam was too high; that consequently the plaintiff is necessarily entitled to your verdict for holding back the water on the 1st March, 1845, and therefore entitled to damages for that day, if it be only sixpence; but as to all the rest of the period, that verdict is not conclusive. The question is entirely open, and it is for you to say, upon the evidence, whether that dam has been raised by the defendant higher than it ought to have been; and if so, what damage it has been to the plaintiff.

These are questions entirely for your consideration. The evidence is fairly before you. It has been very fully and fairly discussed, and I leave it with you, with the single remark, that, as usual in water cases, there is much conflict of testimony.

The second ground of complaint is, the obstruction of the plaintiff's right to convey his cider, in leaders, from his cidermill to his distillery, across the defendant's lot.

The right of the parties upon this point is all settled by deed. In the deed for the mill from William to John, the same deed before referred to, there is an exception of the distillery to William and his heirs, in these words: "except thereout the distillery, and every thing thereunto belonging, with the same

privilege as it has heretofore been used for distilling, unto the said party of the first part, and to his heirs and assigns."

Now this deed clearly reserves and secures to William the right to all the privileges connected with the distillery, and consequently the right to carry the cider in leaders across the defendant's land, as he had been accustomed to do. To this claim a reasonable and common sense construction must be given. William, on the one hand, is not to be limited to the use of leaders of the same shape, or in the same place, or the same kind of cisterns, or for a given number of days, but he may use the privileges in such manner as may be most beneficial to himself, without any increase of prejudice to the rights of his brother John. On the other hand, the clause is not to be construed so as to authorize William to make such change in the enjoyment of his easement as to prejudice the property of his brother, or to interfere with the enjoyment of his property, as he had previously used it.

With this suggestion, as to the true and proper construction of the clause and of the rights of the parties, the question of fact is submitted, whether the defendant has obstructed his brother in the fair use of that easement, by improper obstructions in the exercise of the rights; and if so, what damage the plaintiff has sustained?

In case you find for the defendant, gentlemen, a verdict merely of not guilty will be sufficient. If you find for the plaintiff, it may save the parties much further difficulty; and I would recommend to you to find, separately, whether he is guilty of holding his dam too high, or of obstructing the plaintiff in the enjoyment of his distillery, or both; and also, if you find him guilty of holding back the water, whether he be guilty on any other day than the 1st March, 1845; in order that if you should find a verdict merely for that day, in compliance with the charge of the court, the defendant may have a remedy for an error in the charge upon that point.

To which charge of the court, and the opinions therein expressed, the defendant, by his counsel, objected, and prayed a bill of exceptions.

And the jury aforesaid gave their verdict, and found the de-

fendant guilty upon the first two counts of the declaration, and assessed the plaintiff's damages, by reason of the grievances in said two counts alleged, at one hundred and twenty-five dollars; and that they found the defendant guilty upon the last count in the declaration, and assessed the plaintiff's damages, by reason of the grievances therein alleged, at two hundred and seventy-five dollars, being four hundred dollars in the whole, with six cents costs; whereupon the court rendered judgment, &c.

The reasons in error, assigned, were—

1st. Because the court, at the trial, allowed the plaintiff to give in evidence the record of a suit, and judgment thereon, in the Circuit Court of the county of Bergen, brought by John Ward against William Ward, in an action of trespass, and that he admitted the same against the objections of the defendant, urged at the time, the objection being noted.

2d. Because the court charged the jury that the finding of the jury and judgment rendered in the said suit of trespass of John Ward against William Ward was conclusive between the parties in the present suit. That it was conclusive in favor of the plaintiff in the present action that the defendant's dam was too high on the first day of March, 1845, and that therefore the plaintiff was entitled to a verdict.

3d. Because the court erred in the construction and meaning placed by him on the reservations contained in the deed from William Ward to John Ward, by which reservation the said William Ward excepted from the grant then made "the distillery and every thing thereunto belonging, with the same privilege as it has heretofore been used for distilling, unto the said party of the first part, and to his heirs and assigns."

4th. Because the said reservation did not, as charged by the court, authorize William Ward to place the leaders as stated, nor in the manner they were placed by him.

5th. Because the court charged the jury that the plaintiff had a right to place the leaders in the manner he did.

6th. Because the instructions of the court, as to the manner of rendering the verdict, and the finding of the verdict in conformity thereto, was irregular and illegal.

7th. Because the verdict and judgment were rendered for the plaintiff, when they should have been for the defendant.

*Hopper*, on part of plaintiff in error, read the papers.

*A. S. Pennington* moved to strike out the first assignment of error, on the ground that there was no bill of exceptions sealed and allowed on that point.

Also, to strike out all the other errors assigned on the charge of the Chief Justice, because the exception taken allowed and sealed to the charge was general, without specifying any point of particular error; and, in support of his motion, he referred to *Oliver* v. *Phelps*, 1 *Spenc.* 180, and the same case in error, 1 *Zab.* 597; *Potts* v. *Clark*, 1 *Spenc.* 538; *Moran* v. *Green*, 1 *Zab.* 562; *Perth Amboy Man. Co.* v. *Condit & Bowles*, 1 *Zab.* 659.

*W. Pennington*, contra.

RANDOLPH, J.   There is no doubt but the first error must be stricken out.   The record shows that the party objected, but not that there was any bill of exceptions signed or presented. The other objection has been several times incidentally before the Supreme Court, and also before this court; and although various opinions have been expressed, some of which are reported and others not, the point now raised has never been directly decided.

The old practice was, when a party was dissatisfied with the charge of the judge, simply to take a general exception without specification, and thus have the whole charge spread upon the record.   This led to many inconveniences and much injustice, both to the court and the parties; and some years since the practice was changed, and now the judge usually requires the party objecting to specify his objections, and if he neglects to do it, the adverse party may require it; but if neither judge or party require specification, and a general bill of exception is tendered and signed, to the whole charge, and thus it becomes in *extenso* a part of the record, I know of no rule of law or propriety which forbids the party to assign his errors upon any part of the charge or record.   If the party

objecting is not required to specify at the trial, he may do so in assigning errors, and set forth any error which may appear upon the record, and this court has no right to deprive him of that benefit; but if he assign for error what does not appear upon the record, or is not covered by some bill of exception, the assignment may be stricken out of course, or the same be excluded from consideration in the argument or the decision of the court. The right of the party to take exceptions to any part of the charge covered by a general bill of exception allowed and sealed as to the whole, and the weight to be given to such exception, are very different things. The charge must be taken as a whole, and the point objected to considered in that light; or if it appear that the objection was of such a character that the specification of it below would have cured the evil, then, of course, it can be of very little force in an appellate court. But if the party is suffered to take a general exception to the whole charge without objection by court or counsel below, and a bill is actually signed embracing the whole charge, it would be doing great injustice to the exceptant if he were prohibited from making a fair assignment of errors on that charge.

The first assignment of error was stricken out, and the motion refused, as to the errors assigned on the charge, by the unanimous opinion of the court.

*Zabriskie*, on part of the defendant in error, moved for the production of the original bills of exceptions, if any there were, that it might be seen by the court whether the judge of Bergen county Circuit Court had in point of fact signed a bill of exceptions to the charge generally.

*W. Pennington*, for plaintiff in error, objected to this motion as too late; that the defendant, having permitted the printed case, in which the bill of exceptions was printed, with the signature and seal of the circuit judge, to be read without objection, and the argument to be commenced, it was now too late to inquire for the bill of exceptions, and that they could not be called upon to produce any.

*Zabriskie*, in reply. The bill of exceptions is part of the re-

cord and an original paper, upon which all the assignment of errors depends. The printed case is only a copy for the *convenience* of the court. It now turns out that there never was any bill of exceptions signed. It is not *laches* in counsel to suppose that when a bill of exceptions is printed in a state of the case, with the signature and seal of the circuit judge, that there is *in fact* a bill signed. The almost universal practice, in this state, of keeping the bill from the files among the private papers of the plaintiff's attorney would prevent the fact being discovered ; and it is not reasonable, when, in the course of a cause, improper exceptions are sustained on the ground that the Circuit Court allowed them, to inquire if *in fact* that court did allow them. The court may hear the *argument* from the printed bill ; but how can they give a judgment founded on this supposed bill of exceptions, when it has no existence on their files or elsewhere.

The court, on conference, held that in this stage of the cause the defendant in error had no right to call for any bill of exceptions.

*Hopper* and *W. Pennington*, for plaintiffs in error.

1st point. The verdict in the former suit was not conclusive, unless pleaded. All estoppels must be pleaded, or else only evidence that the jury may is satisfied disregarded. 2 *Paine* 493.

2d point. The Circuit Court erred in its construction of the reservation of the deed as to the distillery. The distillery itself was only reserved, which is the building, not any land or easement over any land ; at all events plaintiff was confined to the use of his leaders in the same position, and no other.

3. The direction of the court, as to the verdict, was erroneous and contrary to law. *Arch. Pr.* 195–6

*A. S. Pennington* and *Zabriskie*, contra.

1st point. The rule, as to pleading an estoppel, is clear and well settled. It must be pleaded if a party has an opportunity to plead it, else it is not conclusive. But a deed or judgment offered in evidence, which a party has had no opportunity to plead, will be an estoppel, and conclusive when given in evi-

dence. 1 *Salk.* 276, *Trevivian* v. *Lawrence;* 2 *Sim. L. Cas.* 430, (*S. C.*) and authorities in notes; 3 *Cowen's Phil. Ev.* 804— 810, and 975; 8 *Wend.* 1 and 35, *Wood* v. *Jackson;* 2 *Hill's* (*N. Y.*) *R.* 478.

2d point. The reservation of the distillery reserves the lands on which it stands, and reserving the privileges creates an easement over the part granted. The charge of the court was, that the plaintiff must use his privileges not in precisely the same manner, but so as not to be more onerous to the defendant than they were formerly used.

3d point. As to the verdict, the separate finding on each issue is lawful, and in the case of two distinct causes of action, as here, in one declaration, peculiarly proper. 1 *Chit. Pl.* 411; 3 *Johns. R.* 189; 3 *Chit. Gen. Pr.* 921; 1 *Arch. Pr.* 195.

The court, all the judges except the Chief Justice and Justice Carpenter being present, unanimously affirmed the judgment below. No written opinion being delivered by any of the judges.

CITED *in Lutes* v. *Alpaugh,* 3 *Zab.* 166; *Donnelly* v. *State,* 2 *Dutch.* 606; *Hinchman* v. *Rutan,* 2 *Vr.* 502; *Hopper* ads. *Chamberlain,* 5 *Vr.* 225.